Dear Ms. Wilemon:
Your request for an opinion concerning the responsibility of corrections facilities for the constitutional rights of juvenile inmates has been forwarded to me for research and reply. You asked the following:
What responsibility does a Juvenile Detention Center bear to a juvenile inmate questioned by police as a non-suspect?
This question focuses on whether juvenile detention centers (JDCs) may require that police only interview juvenile inmates — even those not considered suspects — under certain limited conditions (e.g. only in the presence of a concerned adult or at the JDC facility). In short, while nothing in the law requires corrections facilities insure that police honor the child's constitutional rights, the JDC may enact any policy that it deems appropriate in the interests of its inmates, as long as those policies do not violate any other statute or constitutional provision.
The controlling law for parish-operated juvenile facilities is Louisiana Revised Statutes 46:1935. While it is acknowledged that this section of laws is directed towards "Juvenile Detention Homes," it nonetheless proves applicable to those JDCs performing the functions of a juvenile detention home. As defined in LSA R.S. 46:1936, these functions include: providing for the temporary detention of juveniles awaiting trial or other disposition of their cases as well as juveniles awaiting transfer to the Louisiana Department of Corrections.
Therefore, under LSA R.S. 46:1935, a juvenile detention center may, through its governing authority, "adopt rules and regulations for the operation and maintenance of the home and generally do all things lawfully to provide temporary custodial care, supervision, and education of the juveniles." Inherent in the notion of custodial care and supervision is the facility's ability to make decisions mindful of the best interests of those persons under their control. This includes enacting reasonable limitations on where, how, and with whom juvenile inmates may interact. Just as parents may exercise the power to manage and limit the activities of their child, so also may authorities at JDCs.
The only caveat in R.S. 46:1935 is that the facility's adopted rules and regulations must nevertheless comport with the law. But in the absence of statutory violation or constitutional infringement, policies enacted by the juvenile institutions should be honored. This also applies to police requests to transfer juvenile inmates for administrative processing and similar tasks. Without a warrant or similar court order, the facility's own policy discretion in matters involving its inmates should be given great deference in all such matters.
In the interrogation of a juvenile — whether as a suspect or a witness — the corrections facility owes no duty to protect against the excesses of police interrogation and guard an inmate's constitutional right to counsel and right against self-incrimination. This duty belongs to the police. If officers violate an individual's rights under Article 1 § 13
of the Louisiana Constitution, the sanctions devolve on the police, whose evidence and the fruits therefrom are declared inadmissible. Therefore, where information is elicited from a juvenile, the police proceed at their own peril.
The burden on police is well-recognized. Because most juveniles are not mature enough to understand their rights and are not competent to exercise them, Louisiana requires that they not be permitted to waive their constitutional rights without first engaging in meaningful consultation with an attorney, informed parent, guardian, or other adult interested in their welfare. In re Dino, 359 So.2d 586 (La. 1978). This holding was codified in Louisiana Children's Code article 810. Although Dino was limited to those juveniles regarded as suspects, there is some indication that its rationale extends even to non-suspects.
In State v. Lawson, 367 So.2d 295 (La. 1979), the court addressed the rights of a juvenile called as a witness at trial. It held that where a juvenile is involved, the court should appoint counsel and permit the attorney to assert privileges against self incrimination on behalf of the witness after consultation and with permission of the witness. In so ruling, the court stated that it seriously questioned whether juveniles in all cases are sufficiently informed in the law to decide whether their testimony is incriminating. If an interested adult was necessary for a juvenile witness in a court and in the presence of a judge and roomful of attorneys, then the same concerns should guide the police in their questioning of juvenile inmates in the closed confines of a JDC. Nevertheless, these requirements devolve on the police and their investigation, and not the JDC.
However, there is no prohibition, either in statute or jurisprudence, denying JDCs the power to enhance a juvenile inmate's constitutional protections through the facility's own policies and procedures. While the Constitution establishes the juvenile's minimum rights, the JDC may provide more in the exercise of their own discretion pursuant to LSA R.S. 46:1935. The JDC simply cannot enact policies that infringe on the basic constitutional protections afforded to juveniles. Thus, a policy prohibiting the presence of an attorney or concerned adult during police interrogation at a parish juvenile facility would be violative of the child's basic constitutional rights. However, if the JDC wishes to afford more stringent safeguards in excess of the constitutional minimum, they are within their policy discretion as established in LSA R.S. 46:1935.
Therefore, it is the opinion of this office that juvenile detention centers may lawfully require that police only interview juvenile inmates — even those not considered suspects — under certain, limited conditions.
If our office can be of further assistance, please do not hesitate to contact us. With kindest regards, I remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: __________________________ JENNIFER HINKEBEIN Assistant Attorney General
Ms. Georgia Wilemon Legal Advisor Police Department City of Baton Rouge Post Office Box 2406 Baton Rouge, LA 70821
RECEIVED: 12/22/94
RELEASED:
JENNIFER HINKEBEIN Assistant Attorney General